EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Isis N. Ramírez Salcedo<br>(TS-8719) | 2017 TSPR 193<br><br>198 DPR ____ |

Número del Caso: CP-2016-14


Fecha:   1 de diciembre de 2017


Oficina del Procurador General

       Lcdo. Luis Román Negrón
       Procurador General

       Lcda. Minnie H. Rodríguez López
       Procuradora General Auxiliar


Abogado de la querellada:


       Lcdo. Ramón Pérez González




Materia:  Conducta Profesional – Desestimación y archivo de querella ética presentada al amparo de los Cánones 7 y 8 de Ética Profesional al no cumplirse con el estándar de prueba requerido.




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| In re:<br><br>Isis N. Ramírez Salcedo<br>TS-8719 | CP-2016-14 |  |

*PER CURIAM*

En San Juan, Puerto Rico, a 1 de diciembre de 2017.

En esta ocasión nos corresponde determinar si la Lcda. Isis N. Ramírez Salcedo (licenciada Ramírez Salcedo o querellada) infringió los Cánones 7 y 8 del Código de Ética Profesional, 4 LPRA Ap. IX, Cs. 7 y 8.

La licenciada Ramírez Salcedo fue admitida al ejercicio de la abogacía el 15 de mayo de 1981 y a la práctica de la notaría el 5 de junio del mismo año. El proceso disciplinario de epígrafe surgió como consecuencia de una reclamación sobre cobro de dinero instada por la licenciada Ramírez Salcedo.[1] Esta reclamó a Pedro Lasanta Umpierre y Gabriel Lasanta Umpierre (hermanos Lasanta Umpierre) el pago de honorarios de abogado que alegadamente le adeudaban a raíz de un pleito sobre partición de herencia en el que los representó.[2]

---

[1] *Isis N. Ramírez Salcedo v. Pedro J. Lasanta Umpierre y otros*, KCD2003-0357.

[2] *Pedro Lasanta Umpierre v. Myrna Lasanta Umpierre,* Civil Núm. EAC2000-0231 (401).

A continuación, exponemos los antecedentes fácticos que dieron génesis a la querella de epígrafe.

I

El 23 de mayo de 2000, la licenciada Ramírez Salcedo presentó una demanda sobre partición de herencia en representación de los hermanos Lasanta Umpierre.[3] Estos solicitaron la partición y adjudicación del caudal hereditario de su padre, Don Pedro Lasanta Gómez (el causante). Alegaron que su hermana, la Sra. Myrna Lasanta Umpierre, asumió la posesión de los bienes que correspondían al caudal hereditario, ignorando el derecho que estos ostentaban sobre tales bienes.[4] Por su parte, la señora Lasanta Umpierre contestó la demanda y sostuvo que los bienes en cuestión no formaban parte del caudal hereditario pues eran propiedad de Avanzada de la Verdad, Inc., una corporación sin fines de lucro.[5]

Posteriormente, la licenciada Ramírez Salcedo enmendó la demanda y acumuló a Avanzada como parte demandada. Alegó que Avanzada era, en realidad, un alter ego del causante, por lo que los bienes correspondían al caudal hereditario mas no a Avanzada. Luego de varios trámites

---

[3] Pedro Lasanta Umpierre y Gabriel Lasanta Umpierre demandaron a sus hermanos Myrna y Roberto Lasanta Umpierre.

[4] Los bienes en cuestión eran: nueve (9) edificios; seis (6) parcelas de terreno y una serie de bienes muebles. Véase *Isis N. Ramírez Salcedo v. Pedro Lasanta Umpierre y otros,* KLAN201101650 (Sentencia del 30 de abril de 2012), pág. 12.

[5] Avanzada de la Verdad, Inc., fue incorporada por Don Pedro Lasanta Gómez (el causante), su exesposa, la Sra. Virginia Rivera Oyola, y su hijo, el Sr. Pedro Lasanta Umpierre.

procesales, las partes evaluaron la posibilidad de efectuar un acuerdo transaccional. Avanzada no había pagado contribuciones por años, por lo que durante las negociaciones se discutió el efecto contributivo que tendría el que se reconociera que los bienes a nombre de Avanzada eran los bienes sujetos a partición. En ese momento, el acuerdo no se concretó pues la señora Lasanta Umpierre no estuvo conforme con los términos.

Tiempo después, las partes llegaron a un acuerdo extrajudicial en torno a la partición de la herencia. Mediante tal acuerdo, los hermanos Lasanta Umpierre obtuvieron el control de los bienes a nombre de Avanzada a cambio de cincuenta mil dólares ($50,000) que recibió la señora Lasanta Umpierre. Las partes estipularon, *inter alia*, que reconocían que Avanzada era una persona separada e independiente de la del causante y que la señora Lasanta Umpierre le cedía la administración total de Avanzada a sus hermanos. Los hermanos Lasanta Umpierre solicitaron el desistimiento con perjuicio de la reclamación.

Posteriormente, la licenciada Ramírez Salcedo demandó a los hermanos Lasanta Umpierre en cobro de dinero.[6] Adujo que estos no le pagaron los honorarios de abogado según fueron pactados. Luego de varios trámites procesales, el Tribunal de Primera Instancia dictó Sentencia en la que declaró con lugar la demanda y condenó a los hermanos

---

[6] *Isis N. Ramírez Salcedo v. Pedro J. Lasanta Umpierre y otros*, KCD2003-0357 (902).

Lasanta Umpierre a satisfacer los honorarios de abogado reclamados por la licenciada Ramírez Salcedo. Inconformes, los hermanos Lasanta Umpierre acudieron al Tribunal de Apelaciones.

El 4 de mayo de 2012, el foro *a quo* notificó una Sentencia. Concluyó, *inter alia*, que la licenciada Ramírez Salcedo participó en un esquema de fraude contributivo perpetrado por los hermanos Lasanta Umpierre y que los honorarios que pretendía cobrar eran fruto de tal actuación antiética.[7] Por tal razón, la refirió al Tribunal Supremo para la investigación correspondiente. Al contestar la queja, la licenciada Ramírez Salcedo aseguró que nunca aconsejó a sus clientes a realizar ningún acto ilegal. Arguyó que desde el inicio advirtió a los hermanos Lasanta Umpierre de las potenciales consecuencias contributivas y que el Sr. Pedro Lasanta Umpierre, particularmente, indicó estar consciente de tales consecuencias debido a que este era auditor del Departamento de Hacienda.

El 11 de julio de 2012, remitimos el asunto a la Oficina del Procurador General (OPG) para que lo investigara y emitiera el informe correspondiente. El 5 de diciembre de 2012, la OPG presentó el *Informe del Procurador General*. En su informe, la OPG indicó que "no conta[ban] con evidencia robusta[,] clara y convincente

---

[7] *Isis N. Ramírez Salcedo v. Pedro J. Lasanta Umpierre y otros,* KLAN201101650 (Sentencia del 30 de abril de 2012).

que demuestre que las actuaciones de la querellada fueron dirigidas" a asistir o facilitar el esquema fraudulento perpetrado por sus clientes.[8] Asimismo, concluyó que "no conta[ban] con prueba clara, robusta y convincente que demuestre que la querellada asesoró a sus clientes respecto a cómo continuar utilizando las corporaciones para fines fraudulentos"[9] Luego de varios trámites procesales, irrelevantes a la controversia que nos ocupa, el 22 de abril de 2016 ordenamos a la OPG a presentar la querella correspondiente. Así las cosas, la OPG presentó la *Querella* y le imputó a la licenciada Ramírez Salcedo violaciones a los Cánones 7 y 8 del Código de Ética Profesional, *supra*.[10]

En vista de lo anterior, el 14 de febrero de 2017 designamos a la Hon. Jeannette Ramos Buonomo, ex jueza del Tribunal de Apelaciones, para que recibiera la prueba y nos emitiera un Informe con las determinaciones de hechos

---

[8] *Informe del Procurador General* de 5 de diciembre de 2015, pág. 6.

[9] Íd., pág. 7.4

[10] Según el *Informe del Procurador General*, los cargos que le imputaron a la Lcda. Isis N. Ramírez Salcedo se fundamentaron en que esta conocía que los bienes del caudal hereditario de sus clientes eran los mismos bienes que estaban a nombre de la Corporación Avanzada de la Verdad, Inc. (Avanzada); que Avanzada estaba inscrita como una corporación sin fines de lucro y estaba bajo el control de uno de los herederos del causante; que preparó una estipulación en la que Avanzada le traspasaría mitad de los bienes a otra corporación con el propósito de llegar a un acuerdo extrajudicial entre las partes pero Myrna Lasanta Umpierre no lo aceptó ya que le preocupaba los efectos contributivos que tendría para Avanzada; que en el acuerdo extrajudicial finalmente efectuado reconoció que Avanzada era una entidad distinta de la persona que en vida fue Don Pedro Lasanta Gómez (el causante); y que todo ello apuntaba a que la licenciada Ramírez Salcedo participó del esquema fraudulento en virtud del cual sus clientes pretendían evadir su responsabilidad contributiva. Véase, *Querella*, pág. 5.

y recomendaciones que estimara pertinente. El 7 de marzo de 2017 se celebró la primera vista. Durante la referida vista, y tras un breve receso, la Comisionada Especial le concedió un término a la querellada para que contestara la querella y pautó la Vista en su Fondo para el 12 de abril de 2017.[11] La licenciada Ramírez Salcedo presentó su *Contestación a la Querella* el 27 de marzo de 2017. Esta negó haber incurrido en conducta antiética. En cuanto a los cargos, sostuvo que del propio *Informe de la Procuradora General* surgía que no contaban con prueba clara, robusta y convincente para demostrar las presuntas violaciones éticas que se le imputaron.

Durante la Vista en su Fondo, la Procuradora General Auxiliar, Lcda. Minnie H. Rodríguez López indicó que no presentarían prueba testifical contra la querellada y que someterían los cargos por el expediente.[12] En su turno de prueba, la querellada fue interrogada por su abogado, el Lcdo. Ramón A. Pérez González. Posteriormente, fue contrainterrogada por la licenciada Rodríguez López. Culminado el contrainterrogatorio, la Comisionada Especial le inquirió a la licenciada Rodríguez López si entendía que existía prueba clara, robusta y convincente para concluir que la querellada había cometido las violaciones

---

[11] *Minuta* del 15 de marzo de 2017.

[12] Los expedientes a base de los cuales se someterían los cargos son los siguientes: *Isis Ramírez Salcedo v. Pedro J. Lasanta Umpierre y otros,* Civil Núm. KCD 2003-0357 (902); *Pedro J. Lasanta Umpierre y otros v. Myrna Lasanta Umpierre y otros*, Civil Núm. EAC 2000-0231 (401) y *Avanzada de la Verdad v. Virginia Oyola*, Civil Núm. CS 86-1003 (611).

que se le imputaron.[13] La Procuradora General Auxiliar respondió que no.[14] Así las cosas, el caso quedó sometido.

El 20 de junio de 2017, la Comisionada Especial sometió su Informe. Concluyó que no existía prueba clara, robusta y convincente de que la Lcda. Isis N. Ramírez Salcedo violentara los Cánones 7 y 8 del Código de Ética Profesional, *supra.*[15] Además, hizo constar que, luego de escuchar a la querellada, la OGP solicitó enmendar la recomendación que hizo en el *Informe del Procurador General* a los efectos de recomendarle a la querellada que fuera más cuidadosa en asuntos conflictivos en representaciones legales posteriores.[16]

Reseñado el trasfondo fáctico y procesal, pasemos a exponer la normativa aplicable a esta relación de hechos.

II

A.

Como primer cargo, se le imputó a la querellada haber violado el Canon 7 de Ética Profesional, *supra*, al alegadamente haber asesorado a los hermanos Lasanta Umpierre sobre cómo evadir el pago de contribuciones utilizando el velo corporativo de Avanzada, una corporación sin fines de lucro. En lo relativo al caso de epígrafe, el Canon 7 del Código de Ética Profesional, *supra*, establece que:

---

[13] Minuta del 21 de abril de 2017, pág. 1.

[14] Íd.

[15] *Informe de la Comisionada Especial*, pág. 3.

[16] Íd.

> [s]erá altamente impropio de un abogado dar consejo legal a una persona o entidad para facilitar o encubrir la comisión de un delito público. Si un abogado es informado por su cliente de su intención de cometer un delito público, tiene el deber de adoptar aquellas medidas adecuadas para evitar la comisión de tal delito. 4 LPRA Ap. IX, C. 7.

De lo anterior se puede colegir que el mencionado canon le impone al abogado, por lo menos, dos (2) deberes independientes: (1) no ofrecer consejos legales para facilitar o encubrir la comisión de un delito y (2) persuadir a su cliente de no cometer un delito cuando este le haya expresado que tiene intención de llevarlo a cabo.

### B.

Como segundo cargo, se le imputó a la querellada haber violado el Canon 8 de Ética Profesional, *supra*, el cual dispone en parte que:

> [e]l abogado no debe permitir que sus clientes, en el trámite de los asuntos que crean la relación de abogado y cliente, incurran en conducta que sería impropia del abogado si él la llevase a cabo personalmente. Esta norma tendrá particular aplicación en lo referente a las relaciones con los tribunales, los funcionarios judiciales, los jurados, los testigos y las otras partes litigantes. 4 LPRA Ap. IX, C. 8.

En virtud de tal disposición, un abogado que sugiere a su cliente y lo ayuda a ocultar la existencia de una hija durante un trámite de divorcio incurre en conducta antiética. *In re Avila Jr.*, 109 DPR 440 (1980). También transgrede el Canon 8 de Ética Profesional el abogado que deposita un dinero que le entregó su cliente, a sabiendas de que este lo retiró de una cuenta de banco perteneciente a un caudal hereditario que el propio abogado había

ordenado fuera congelada hasta tanto se culminara con el pleito de partición de herencia. *In re Nereida Rivera Navarro*, 193 DPR 303 (2015). Este precepto ético también proscribe que un abogado actúe inspirado por la animosidad que su cliente pueda exhibir contra la parte contraria y que un abogado permita que el cliente se vuelva dueño de su consciencia y sea quien dirija el caso. *In re Carmelo Rodríguez Feliciano*, 165 DPR 565, 580-581 (2005).

C.

El Comisionado Especial designado por este Tribunal para atender una querella instada contra un abogado ocupa el rol del juzgador de instancia. Específicamente, tiene la encomienda de recibir la prueba, evaluarla y dirimir la credibilidad de cualquier prueba testifical presentada. *In re Morales Soto*, 134 DPR 1012 (1994). Como norma general, las determinaciones del Comisionado Especial merecen nuestra deferencia. *In re Soto López,* 135 DPR 642 (1994). Sin embargo, no estamos obligados por la recomendación de su informe, y en lugar de adoptarlo, podemos modificarlo o rechazarlo. *In re Morales Soto,* supra, págs. 1016-1017. Ahora bien, hemos expresado en reiteradas ocasiones que este Tribunal no alterará las determinaciones de hechos del Comisionado Especial a menos que se demuestre prejuicio, parcialidad o error manifiesto. *In re Fernández de Ruiz,* 167 DPR 661 (2006); *In re Moreira Avillán*, 147 DPR 78, 86 (1991); *In re Rivera Alvelo y Ortiz Velázquez*, 132 DPR 840 (1993).

III

Nos corresponde determinar si la querellada asesoró o participó activamente en el presunto esquema de evasión contributiva que llevaban a cabo los hermanos Lasanta Umpierre. ¿Es suficiente la estipulación incluida en el acuerdo transaccional a los efectos de que Avanzada era una entidad con personalidad jurídica separada a la del causante mas no un alter ego para hacer tal determinación? Adelantamos que la prueba desfilada no cumple con el *quantum* de prueba requerido para los procesos disciplinarios, según adoptado en *In re Caratini Alvarado,* 153 DPR 575, 584-585 (2001), a saber: el de prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas.

En primer lugar, y si en efecto Avanzada fue incorporada con el propósito de evadir el pago de contribuciones y defraudar al erario, resulta imposible imputarle tal responsabilidad a la querellada. Basta con mencionar que Avanzada fue incorporada en el año 1965, mientras que la querellada fue admitida al ejercicio de la abogacía en el año 1981.

En segundo lugar, tampoco podemos concluir que la querellada asesoró o participó activamente de cualquier esquema de evasión contributiva que pudo haber perpetrado la señora Lasanta Umpierre durante el tiempo en el que esta administró Avanzada. Un examen de los expedientes

sugiere todo lo contrario. Entre el 24 de septiembre de 1986 –fecha en la que falleció Don Pedro Lasanta Gómez- y el 14 de diciembre de 2001 –fecha en la que el foro primario dictó la Sentencia que finalizó el pleito sobre partición de herencia- tanto la señora Lasanta Umpierre como Avanzada estuvieron representadas legalmente por sus respectivos abogados. Además, durante las negociaciones del acuerdo transaccional, en las que participó tanto la señora Lasanta Umpierre como sus hermanos, la querellada discutió los posibles efectos contributivos que tendría el que se reconociera que los bienes sujetos a partición eran los mismos que estaban a nombre de Avanzada.[17] Ello apunta a que la letrada cumplió con su deber de advertirles que los bienes en cuestión, al ser parte del caudal hereditario, estaban sujetos al pago de contribuciones.

En tercer lugar, la estipulación en el acuerdo transaccional a los efectos de que Avanzada y el causante tenían personalidades jurídicas separadas e independientes no es indicativo *per se* de que la querellada infringió los Cánones 7 y 8 de Ética Profesional, *supra.* Tal estipulación fue redactada por el abogado de la señora Lasanta Umpierre, el Lcdo. Antonio Rodríguez Fraticelli. Además, el que Avanzada fuera un alter ego del causante o una entidad separada era un hecho que estaba en controversia, tanto en *Avanzada de la Verdad v. Virginia*

---

[17] *Isis N. Ramírez Salcedo v. Pedro Lasanta Umpierre y otros,* Civil Núm. KCD2003-0357 (902) (Sentencia del 6 de julio de 2011), pág.11; *Isis N. Ramírez Salcedo v. Pedro Lasanta Umpierre y otros,* KLAN201101650 (Sentencia del 30 de abril de 2012), pág. 10.

*Oyola*, Civil Núm. CS 86-1003 (611) como en *Pedro Lasanta Umpierre v. Myrna Lasanta Umpierre,* Civil Núm. EAC2000-0231 (401). Por tal razón, no albergamos duda en cuanto a que la estipulación se efectuó con el propósito de poner fin a una de las cuestiones litigiosas mas no para defraudar al Departamento de Hacienda.

Por último, de los autos no surge que los hermanos Lasanta Umpierre le hubieran indicado a la querellada su intención de no pagar contribuciones sobre los bienes del caudal hereditario. De haber sucedido, la querellada venía obligada a persuadirlos de que no incurrieran en tal conducta delictiva. Tampoco surge que la querellada los aconsejó ni que los asesoró sobre cómo incumplir con su obligación contributiva.

Antes de presentar la querella, la OPG entendió que no existía prueba clara, robusta y convincente de que la licenciada Ramírez Salcedo hubiera violado los Cánones 7 y 8 de Ética Profesional, *supra.* Durante la Vista en su Fondo, la OPG no presentó prueba. Aun pudiendo llamar como testigo a cualquiera de los hermanos Lasanta Umpierre, decidió someter los cargos a base de expedientes. Por consiguiente, las determinaciones de hecho de la Comisionada Especial están fundamentadas en el testimonio de la querellada y en los expedientes de los casos en controversia. Culminada la Vista en su Fondo, a preguntas de la Comisionada Especial, la OPG afirmó, por segunda ocasión, que carecían de prueba clara, robusta y

convincente para sostener los cargos imputados a la querellada.

Sometido el caso, la Comisionada Especial concluyó que la prueba a base de la cual se sometieron los cargos no satisfizo el estándar requerido en los procesos disciplinarios. Un examen de la prueba nos obliga a llegar a la misma conclusión. Por lo tanto, y en ausencia de prejuicio, parcialidad o error manifiesto, no podemos intervenir con la determinación de la Comisionada Especial.

## IV

Por entender que no se presentó prueba clara, robusta y convincente para concluir que la conducta de la querellada se apartó de las normas éticas que rigen la profesión de la abogacía, particularmente las recogidas en los Cánones 7 y 8 de Ética Profesional, *supra*, se ordena la desestimación y el archivo de la querella presentada en su contra.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| In re:<br><br>Isis N. Ramírez Salcedo<br><br>TS-8719 | CP-2016-0014 |  |

SENTENCIA

En San Juan, Puerto Rico, a 1 de diciembre de 2017.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se ordena la desestimación y el archivo de la querella presentada en contra de la Lcda. Isis N. Ramírez Salcedo.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo